[No. 31722. Department One. October 29, 1951.]

PAUL H. KOENIG, *Appellant,* v. L. P. HANSEN, *Respondent.*[1]

[1]Reported in 236 P. (2d) 771.

*Moe & Huse,* for appellant.

*O. R. Hopewell* and *Frank B. Malloy,* for respondent.

GRADY, J.—This case is before the court upon an appeal taken by appellant from a judgment of the superior court dismissing an action brought by him against respondent arising out of the following situation:

For some years prior to October 9, 1945, respondent had been engaged in wheat raising in Douglas county, and appellant had been in his employ. Respondent owned certain land and necessary farming equipment, and also operated other nearby lands under lease. Respondent desired to retire from the wheat growing business.

On October 9, 1945, respondent and appellant entered into written agreements whereby there was leased to appellant two tracts of land in sections 7 and 10, township 26 north, range 24, for a term ending August 15, 1949, two tracts in sections 5 and 8 for a term ending October 15, 1949, and a tract of land in section 31, township 27, for a term ending October 15, 1947. Respondent entered into a contract with appellant whereby he employed him to do all of the farming operations on a tract of land in section 6, township 26, to and including the year 1949, at a specified compensation for different activities on a per-acre basis. Respondent also entered into a contract of conditional sale with appellant whereby he agreed to sell to him the farming equipment listed therein, together with a cow and calf. The agreed price for the personal property was eight thousand dollars, and the instrument recites a payment of one thousand dollars in cash. The balance of the purchase price was pay-

able in four equal annual installments on or before November 1st of each year.

The rental to be paid for the leased land was one third of all crops raised, the grain to be threshed by appellant and delivered either at grain warehouse or in bins on the premises as directed by respondent. The leases contained nonassignment and subletting clauses. The conditional sales contract also contained a nonassignment clause.

The appellant took possession of the land and farming equipment and occupied a dwelling house on one of the tracts. He owned some personal property and effects, consisting principally of miscellaneous tools and a blacksmith forge and blower. He purchased two small pigs.

In the fall of 1945 and spring of 1946, appellant overhauled and repaired the farm equipment, disked and plowed, and did considerable rod weeding. Some of the land was seeded with winter wheat in the fall of 1945, but it became necessary to reseed a part of it in the spring of 1946. By July 8, 1946, the wheat crop had so matured that it was nearly ready for harvest.

On July 8, 1946, appellant was arrested on felony charges. He entered a plea of guilty, and on the morning of July 13th was taken to the state penitentiary. Respondent and appellant were not afforded any opportunity to see or communicate with each other with reference to what should be done about their business arrangement in view of the changed conditions.

Respondent took possession of the lands, personal property and equipment, and the matured crop of wheat. The personal property and effects of appellant were at his place of abode, but the record is not clear whether respondent actually took possession of them or what became of them, other than some articles taken by a brother of appellant at the latter's request. Respondent disposed of the two pigs. There is some evidence in the record of efforts made by appellant, after he arrived at the penitentiary, to get in contact with some one who might take charge of his affairs, but owing to his limited opportunity under the rules of the

institution he was not able to accomplish anything to that end.

On July 15, 1946, at the request of respondent, a realtor wrote a letter to appellant, informing him that respondent had gone to the farm, was caring for the property and completing the weeding, and would keep account of all work done and expenditures made until such time as a settlement might be made between them. The letter contained a detailed offer of a cash payment covering substantially the following: repayment of the $1,000 paid upon the purchase price of the farm equipment; payment for the work done under the hiring contract in the sum of $352.35; payment for disking and rod weeding on two of the tracts of land in the sum of $572.70; payment for drilling 308 acres of the land seeded in the fall of 1945, the seed therefor, rod weeding and reseeding of 107 acres in the spring of 1946 and the seed therefor, in the sum of $1,234.30, making a total of $3,159.35; and in addition thereto to reimburse appellant in the sum of $171.50 for hail and grain insurance premiums paid by him. The offer stated that when this money was paid, appellant should surrender his leases and the conditional sales contract and cancel the whole deal they had made. No mention was made in the offer as to what was to be done about the matured crop then ready for harvest. This offer was not accepted by appellant.

On August 8, 1946, an attorney acting for respondent wrote a letter to appellant making reference to the one written by the realtor. He called attention to a provision in the leases entitling the lessor to take possession of the property without notice in case that it was not being properly farmed, stating that under the circumstances such was the case, and therefore respondent had taken charge of things after the arrest. It was stated in the letter that respondent would be glad to have appellant do some figuring and see what he would want under the circumstances "for a complete release of your interest in it." It is clear from what precedes this quotation that reference was being made to the leasehold interest. The letter advised appellant that respondent had received a letter written by him August 5th

in which appellant had suggested the name of one who might go ahead with the farming, but that this party did not want to do so. The letter requested that appellant inform the writer what he thought would be a reasonable settlement and suggested that the parties might be able to work out something.

On the same date, and before receiving this letter, appellant wrote to respondent expressing doubt as to what to do under the circumstances and indicating the natural confusion of mind that would follow the happening of recent events. Appellant referred to a letter he had written to the realtor about the contract and lease, and stated he did not know how things would turn out until he appeared before the parole board. He indicated a desire to have his holdings taken over by persons mentioned if they would be satisfactory to respondent. He spoke about harvest starting in a week or ten days and reminded respondent that he had not said anything about it, and stated that he had planned before his arrest to get ready for the harvest the following week. It is apparent from the letter that he was hoping to get some one to take over and manage his property and had not made up his mind what to do in the event he was unsuccessful. The letter shows no inclination to accept the offer made by respondent through the realtor.

On September 3, 1946, respondent consulted his attorney, who prepared a document entitled "surrender of lease." This document referred to the lease of the property in sections 5 and 8, and recited that the lessee was desirous of yielding up possession of the premises and being absolved from further liability for the payment of rent under the lease, and that the lessor was willing to accept surrender of possession of the premises. A blank space was left for the insertion of the consideration. The contracting part was expressed in the following words:

" . . . It is hereby agreed that the lessee yield and surrender up possession of the said premises to the lessor and the lessor hereby accepts the surrender of the possession of the said premises and does hereby release lessor of

and from all obligations to pay rent for the same from this day forth."

Although not all of the lands set forth in the leases and contract were included, such was the intention. The attorney also prepared a bill of sale from appellant to respondent of the farm equipment covered by the conditional sale contract.

Respondent and his wife went to Walla Walla and had a conference with appellant the late afternoon of September 3rd and another one the forenoon of September 4th. At that time, the parties seemed to have in mind the content of the letter written by the realtor. The respondent offered to pay appellant three thousand five hundred dollars. Appellant considered that he should receive the sum of five thousand five hundred dollars. Respondent suggested something to the effect that in prior dealings they had always split the difference, and the sum of four thousand five hundred dollars was inserted in the surrender of lease. Respondent testified that he then said, "This is settlement in all or nothing," and he (meaning appellant) said, "Yes." He also testified that the pigs were mentioned, and that appellant told him they were no good to him so he (respondent) might as well take them both. Respondent gave appellant his check for four thousand five hundred dollars and noted on the face thereof, "settlement in full for contracts." The documents were signed and acknowledged.

At this time, a part of the wheat crop had been harvested, and the balance was harvested after the documents were executed. Some of the threshed wheat was commingled with other wheat taken to the warehouses by respondent and some was stored on respondent's premises. At the trial, respondent was able to account for some of the wheat, the amounts he had received therefor, and the amount of such charges as handling, storage and insurance, but there was considerable wheat which he was not able to segregate. The court was furnished additional data by the warehousemen.

At the close of the case, the court rendered its decision, adopting the theory of respondent that, when appellant was

arrested and sent to the penitentiary, he abandoned his contracts with respondent, and that, by virtue of an oral agreement made on September 3rd and 4th, when the surrender of lease and bill of sale were executed, he also surrendered and relinquished the crop of wheat to respondent. The court also decided that, by virtue of the oral agreement and the instruments executed, any claims with reference to the farming equipment were fully settled, and that such settlement included any claim appellant might have to either of the pigs; also that the settlement included any labor claims appellant might have had for labor performed in accordance with the labor contract.

We are not in accord with the parts of the decision of the court which hold that there was an abandonment of the leased property and the farm equipment, and that there was a verbal agreement made between respondent and appellant by which he gave up and relinquished to respondent his right or title to the crop of wheat.

Appellant lost none of his property rights merely because he was committed to the penitentiary. Const. Art. I, § 16; Rem. Rev. Stat., § 2288 [P.P.C. § 112-65]. He was the owner of the growing crop, and when it was harvested and threshed he was under obligation to deliver one third thereof to respondent as rental. When appellant was disabled from further performance of his contract, respondent took temporary possession of the property in order to protect his interest therein as well as that of his tenant. He did not then have any right of forfeiture or of summary repossession which would divest appellant of any of his property rights. Abandonment involves a voluntary leaving of property with no intention to return and claim or possess it.

The right of respondent to take possession of the property for the purpose of conserving it and protecting his interests therein carried with it certain obligations and duties to appellant, especially in view of the position in which he had been so involuntarily placed. He performed such duties by caring for the livestock and harvesting and threshing the crop of wheat.

No abandonment of the property having been established, the rights of the parties must be measured by what occurred between them when respondent visited appellant at Walla Walla September 3rd and 4th. The appellant testified at the trial that the check received from respondent was in payment for a surrender of the personal property included in the conditional sales contract and the farm leases. We find nothing in the testimony of respondent from which it can be found that appellant agreed that for such payment he would also relinquish his interest in the wheat crop. In our interpretation of the testimony of respondent, we have considered the ambiguous way in which he expressed himself, together with the fact that he was on the witness stand and lacked ability to give as clear expression to some of his thoughts as he might have done had he possessed a better education.

The instruments executed make no reference to the wheat crop. The offer of settlement made through the realtor on July 15th does not contemplate the inclusion of such crop. The great disparity between the value of the wheat crop and the amount paid to appellant is a factor which negatives the idea that a relinquishment of the wheat crop was included in the settlement made.

Whether respondent may be regarded as a converter of appellant's share of the wheat crop or had the duty of accounting therefor, the result of what took place between them was that respondent became indebted to appellant for the value of two thirds of the threshed wheat at the time it became ready for market, less the reasonable cost of harvesting and threshing the whole crop. We find that the share of the wheat to which appellant was entitled was 5,416 bushels, the value of which, at the rate of $1.69 per bushel, amounts to $9,153.04. The cost of harvesting and threshing was three dollars per acre, amounting in all to $954.

We accept the finding of the court that respondent did not convert any of the personal property owned by appellant

at the time of his arrest. At the trial, respondent indicated a willingness to permit appellant to enter upon the premises and take therefrom any of his personal property there found. We are unable to say that the evidence preponderates against the finding of the court that the parties intended to and did include in their settlement the pigs and the labor performed under the labor contract.

The foregoing disposes of the matters and things involved in the appeal and covered by the assignments of error and discussed in the briefs. We have found it unnecessary to cite or quote from texts or adjudicated cases. The situation presented is somewhat unique and unusual, but we have no difficulty in arriving at a solution of the problems presented by the application of elementary principles of law.

The part of the judgment denying recovery for the value of the wheat crop is reversed, and the cause remanded for the entry of judgment for appellant in the sum of $8,199.04, and the costs and disbursements of the action as the same shall be taxed. In all other respects, the judgment is affirmed. The appellant will recover costs and disbursements on appeal.

HILL, MALLERY, DONWORTH, and WEAVER, JJ., concur.

December 5, 1951. Petition for rehearing denied.